ACCEPTED
15-25-00067-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/10/2025 2:36 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00067-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/10/2025 2:36:42 PM
CHRISTOPHER A. PRINE
Clerk

In the Fifteenth Court of Appeals
Austin, Texas

The State of Texas ex. rel. Joshua LaFountain

Appellant,

v.

BLT Management Company, LLC n/k/a BLT Support Services, LLC, et. al.

Appellees.

On Appeal from the 126th Judicial District Court, Travis County

# REPLY BRIEF FOR APPELLANT STATE OF TEXAS
## ex. rel. JOSHUA LAFOUNTAIN

Respectfully Submitted,

/s/James R. Tucker

**JAMES R. TUCKER**
State Bar No. 20272020
5522 Ellsworth Ave.
Dallas, Texas 75206
(214) 505-0097
(214) 599-8874[fax]
rusty@rustytuckerlaw.com

**ATTORNEY FOR APPELLANT STATE OF
TEXAS ex. rel. JOSHUA LAFOUNTAIN**

*Oral Argument Requested*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ i.

I.      INTRODUCTION AND OVERVIEW.............................................. 1

II.      ARGUMENT …………………………………………………… 2

     A. The Appellees Misrepresented that "Nothing"
        Took Place in this Case Until 2024…………………………………2

     B. The Defendants' Obfuscation in "Producing" Documents
        In the Manner Presented Was Effectively No Production at All……4

     C. There is at a Minimum A Material Issue of Fact as to Whether
        Complete Charts Were Produced by the Defendants………………..8

     D. Relator's Allegations Regarding Fluoride Breach Were
        Properly Disclosed in Relator's Fourth Amended Petition…………..9

     E. There Was No Prejudice to the Defendants by
        Relator Offering to Amend the Scheduling Order
        to Extend the Discovery and Other Deadlines………………………10

     F. There Was No Prejudice to the Defendants Due to
        the Alleged Late Designation of Experts……………………………11

     G. The Defendants Refused to Produce Sufficient Documents
        to Allow Relator to Properly Calculate the Amount of
        Penalties and Monies He Sought to Recover at Trial………………..12

CONCLUSION AND PRAYER…………………………………………………12

CERTIFICATE OF COMPLIANCE………………………………………...13

CERTIFICATE OF SERVICE…………………………………………………14

TO THE HONORABLE FIFTEENTH COURT OF APPEALS:

## I. INTRODUCTION AND OVERVIEW

What the Appellees have pulled off to date in benefitting from its own steadfast refusal to produce documents and then claim the No-Evidence Motions for Summary Judgment should be granted because of the lack of evidence is shocking and Appellant strongly urges this Court to correct this injustice. Relator submits this Reply Brief to correct many inaccuracies in the Appellees' Brief as to facts and to clarify certain issues raised by Appellees which when clarified should be more than sufficient to justify a reversal of the trial court's rulings.

One area that Appellant has created a bona fide issue of material fact precluding summary judgment has to do with the Appellees billing for First Dental Home Visits to Medicaid for thousands of patients while not meeting the Medicaid criteria for reimbursement. One of the 11 requirements (requirement number 8) for Medicaid to reimburse for a First Dental Home Visit ("FDH") per the Texas Health and Human Services Commission was that topical fluoride varnish had to be applied to all of the children's erupted teeth during the visit. CR. 629. Relator personally witnessed that Bear Creek dentists started billing for this procedure in 2007; however, **none of the Bear Creek offices had any fluoride varnish until late 2009!** CR. 607, par. 14. Medicaid was billed thousands of times for Code D0145 during 2007-2009 from all Bear Creek offices knowing that no topical fluoride varnish was

1

applied as required. *Id.* The Defendants were asked in discovery for documents proving when they started using fluoride varnish but the Defendants objected to doing so, which in Appellant's view is very telling because they had every opportunity to refute Relator's allegations in this regard and failed to do so.

## II. <u>ARGUMENT</u>

### A. The Appellees Misrepresented that "Nothing" Took Place in this Case Until 2024

In their Appellee's Brief, the Appellees make the incorrect statement in a heading that Relator filed suit in 2012 "but does nothing until 2024". *Brief,* p. 2. This is an absolute falsehood. In current counsel's defense, they only entered the case in late 2023, but they knew or should have known by speaking to prior defense counsel that was not true. There was a substantial amount of activity when the government initially intervened in the case, took it to the administrative courts, only to pull it out of the administrative Courts and took years deciding what to do before ultimately declining the case years later. RR, Vol. 2, p.6, l.30-25; p. 7 lines 1-21. In doing so, the AG's office made clear to counsel for Relator that declining the case had nothing to do with the merits of the case, telling counsel that : "…I know it's a good case, but we just don't have the manpower to stay on your case. So I'm going to have to un-intervene in your case." RR Vol. 2, p. 7, lines 19-21. As counsel for Relator told

the Court at the hearing, "you know, they just didn't have the manpower to pursue this. So, it had nothing to do with the merits. RR Vol. 3, p. 21, lines 2-4.

After the state's declination (again after initially intervening in the case) , as explained at the hearing on this matter, for a period of several years after that, despite not yet having a scheduling order in place, the Relator and the Defendants did a considerable amount of discovery in the form of submitting multiple subpoenas for data pertaining to certain CPT Codes to HHSC and obtaining data pertaining to those codes. As counsel for Relator explained to the Court at the hearing;

> MR. TUCKER: Okay. Yeah. So the 2018 to
> 2023, there was another law firm involved with Bear
> Creek. And we decided jointly to undergo what we call
> informal discovery. We talked about, well, we need to
> get a specific judge assigned and get a scheduling order
> in place.
> But then we -- the more we talked, we
> said, "Look. Why don't we request data from HHSC
> informally and go through that." And we had meetings back and forth
> through the years. COVID, of course,
> complicated that process, getting data from HHSC. You
> know, what would easily take a month or two was taking
> six or eight months and stuff.
> So, you know, long story short, it just
> wasn't productive. And I'm glad we entered -- finally
> entered into a scheduling order early last year when
> they came on board. And I welcomed that, because what
> we were doing before just wasn't working. RR, Vol. 2 p. 42, Lines17-25; p.
> 43, lines 1-9.

There were substantial delays in obtaining that data from HHSC due to covid and other factors. *Id.* Following that, the Defendants would produce sample charts

on an agreed upon basis for those CPT Codes, but this was delayed for months at a time by the Defendants –not Relator—in obtaining those charts. *Id.* The matter of how long it was taking for the Defendants was solely in their control, not in the hands of the Relator. There were several meetings between Relator's counsel and defense counsel analyzing that data over a period of years until 2023 when present counsel made their appearance. *Id.* So to say that Relator did "nothing" until 2024 is simply not true, as there was never any period of time when "nothing" was transpiring.

## B.  The Defendants' Obfuscation in "Producing" Documents In the Manner Presented Was Effectively No Production at All

To say that the Appellees produced substantial amounts of hard copy documents is an understatement. *Brief*, p. 4. To Relator's counsel's dismay, however, when he showed up to review documents in May of 2024, he was shown a warehouse containing what he estimated to be approximately 500 boxes of documents and several filing cabinets. RR. Vol. 2, p.8, lines 17-24; CR. 240.

During the "production" of documents (more akin to obfuscating the production of documents) an overwhelming majority all of the boxes were labelled "end of day reports" (which documents were not even requested to be produced!), and there was no organization whatsoever to have documents identified responsive to specific requests. CR. 240. To that end, on May 21, 2024, counsel for Relator send an email to counsel for Bear Creek requesting that documents be produced in a

manner that clearly indicates what documents are responsive to which requests, stating that it was not appropriate for Bear Creek to produce hundreds of boxes of documents making it next to impossible to go through them all hoping to find the documents requested. CR. 240, 241. To the Relator counsel's astonishment, however, counsel for Bear Creek responded that the documents requested were produced how they were kept in the ordinary course of business! CR. 241. Are documents pertaining to charts reflecting whether fluoride varnish was applied for example really kept in a box labelled "end of day reports" in the ordinary course of business?

With all due respect, the Bear Creek Defendants should not be able to in effect hide documents in 500 boxes labeled "end of day reports" and make Relator's counsel dig through those boxes for well over a year trying to find responsive documents. The Bear Creek Defendants should have been compelled to produce documents as repeatedly requested by Relator's counsel that were responsive to specific requests instead of pointing to 500 boxes labelled "end of day reports" and say that's how documents are kept in the ordinary course of business and good luck finding anything you requested. The Appellees remarkably contend in the context of these facts that "The responding party must either produce documents and tangible things *as they are kept in the usual course of business* or organize and label them to correspond with the categories in the request." *Brief*, pp. 33-34. Again, common

5

sense dictates that the Defendants should have been compelled to "label them to correspond with the categories in the request" given the 500 boxes of documents and finding responsive documents (if any) would have been likely over a year process to "discover a needle in a haystack". Any assertion that that is how the documents were kept in the ordinary course of business is laughable.

It is absolutely true that "the Bear Creek Defendants steadfastly objected to producing **ANY** documents in response to over 60 requests" as asserted in Appellant's Brief (p. 8). The problem with the Appellees position in this regard is that the hearing on Relator's Motion to Compel was pertaining to Relator's Second, Third and Fourth Requests for Production of Documents, the responses to which were not filed until well **AFTER** May of 2024. Their responses to these requests were filed on August 2, 2024, CR. 413 (Second Request), September 12, 2024, CR 428 (Third Request), and January of 2025, CR 433, (Fourth Request), long after the initial "production" of documents. How can the Bear Creek Defendants possibly take the position at the hearing that they had produced documents in response to Relator's Second, Third and Fourth Requests for Production in May of 2024 when **ALL** of those requests were submitted well after the May 8, 2024 "production" of documents? How could they claim to have produced documents that they didn't even know were going to be requested yet? And was Appellant supposed to have a crystal ball as to what he might request in the future?

So the Appellees' contention that the documents produced in May 2024 were responsive to many of his subsequent requests *(Brief,* p. 29) is irrelevant as after the Second, Third and Fourth Requests for Production were submitted, the Defendants objected to EVERY request and did not indicate that they were willing to produce a single document (subject to their objections or otherwise) in response to ANY of those requests. CR 426-445. Nor was counsel for the Relator informed that any documents responsive to those requests were going to be made available for copying at the warehouse or otherwise if the documents were still at the warehouse. Accordingly, the Court's Ruling in failing to compel the production of ANY of these documents was an absolute abuse of discretion.

In their Brief, the Appellees assert that LaFountain's counsel spent less than two hours reviewing the hard copy documents and patient charts produced to him, marked a small number for copying, but never actually got any documents copied. *Brief,* p. 5. The reason for this was as explained to counsel for the Defendants at the time was that rather than randomly copying documents out of approximately 500 boxes of documents as Relator initially planned, Relator decided to hire a data analytics expert at great expense to perform a detailed analysis of HHSC data to ascertain what charts likely showed evidence of fraud, whereupon Relator requested those specific charts and documents in discovery. As counsel for Relator explained at the hearing on the Motion to Compel, rather than copy random documents he hired

a data analytics expert to narrow the scope given the magnitude of documents and charts:

> Your Honor, again, I decided instead of just copying a bunch of random charts, I would go to the expense to hire a data analytics expert to help me identify and narrow the scope of the charts that contained likely indicia of fraud. And that's the route I took.

RR. Vol. 2, p. 51, lines 11-16. See also RR Vol. 2, p. 9, lines 14-25; p. 10, lines 1-4.

This proved a much more fruitful direction for obtaining meaningful charts with likely fraud, and some of the requested charts did indeed back up that analysis and contained substantial evidence of fraud. So the decision to not copy random boxes and target charts likely to contain fraud identified by a data analytics expert was a strategic one that simply made more sense. *Id.*

### C. There is at a Minimum A Material Issue of Fact as to Whether Complete Charts Were Produced by the Defendants

The Appellees assert that the Bear Creek custodian of records explained that all of the electronic patient files were complete and accessible when she prepared and produced the two thumb drives and the laptop: *Brief*, p. 8. She even made the ridiculous assertion without any foundation whatsoever that "…I cannot speak to what actions [LaFountain or his] counsel took in altering the devices or data." *Id.* Why would Relator possibly do that? His goal was to obtain full and complete charts as requested to prove his case. Essentially the Appellees are saying that a prominent expert dentist hired by Relator was lying when he testified in his Affidavit that the

files were not complete with x-rays as explained in detail in Appellant's Brief. APP. 1-6. By definition there is a disputed issue of material fact in this regard as the Relator had an Affidavit saying the charts produced were not complete *(Id.)* and the Defendants produced an Affidavit claiming they were, so summary judgment should have been precluded on that basis.

The Appellees represent in their Brief that "at the hearing Bear Creek demonstrated to the court, on an identical mirrored laptop, that **all** of the requested patient files were on the laptop, and **all** of the x-ray images on the laptop could be opened and viewed". *Brief*, p.11. (emphasis added). The Appellees did no such thing. As explained in Appellant's initial Brief, however, the Appellees showed that two of the charts out of approximately 200 involved contained x-rays. RR Vol. 2, 36-38. Appellant agrees that a few of the charts were complete, but as Dr. Olson testified in his Affidavit most were not complete. APP. 1-6.

### D. Relator's Allegations Regarding Fluoride Breach Were Properly Disclosed in Relator's Fourth Amended Petition

The Appellees contend that that Relator's allegations regarding the use of fluoride varnish were subject to automatic exclusion because they were never disclosed in discovery responses, nor were any such allegations included in LaFountain's lengthy petition. *Brief,* p. 16. This simply is not true. Relator requested items in discovery related to this allegation (CR 437-438; Requests No. 18, 19 and

21) and further made extensive allegations in his Fourth Amended Petition pertaining to fluoride varnish as it relates to Relator itemizing his allegations of violations of the TMFPA:

> (h)…The only reason that two one surface fillings were billed instead of one two surface filling was that it was more profit (i) knowingly committing Unlawful Acts by the Bear Creek Dental Clinics buy submitting claims to Medicaid which did not comply with Medicaid guidelines for reimbursement pertaining to the First Dental Home Initiative. With respect to applying fluoride varnish under that program, it was a requirement that 3 sets of paperwork be filled out, including a questionnaire for the parent to fill out before treatment. **Patients had topical fluoride applied instead of fluoride varnish and Medicaid was billed and paid without any of the required paperwork or documentation in the chart of the patient before doing so.**
>
> (i)      committing Unlawful Acts and knowingly submitting claims for reimbursement from Medicaid which did not comply with Medicaid guidelines for reimbursement pertaining to the First Dental Home Initiative. **With respect to applying fluoride varnish under that program, it was a requirement that 3 sets of paperwork be filled out, including a questionnaire for the parent to fill out before treatment. Patients had topical fluoride applied instead of fluoride varnish and Medicaid was billed and paid without any of the required paperwork or documentation in the chart of the patient before doing so**. Fourth Amended Petition, par. 56(h) and (i);

CR 33. **(emphasis added).**

### E. There Was No Prejudice to the Defendants by Relator Offering to Amend the Scheduling Order to Extend the Discovery and Other Deadlines

The Appellees contend that it was not an abuse of discretion for the trial court to consider the entire timetable and conclude that Bear Creek would be

prejudiced because it could not designate its own experts, complete discovery, or prepare for trial in April given LaFountain's untimely designations. This ignores the fact that Relator filed a Motion to Amend Scheduling Order offering to extend the discovery deadline in part so that the Defendants would have ample time to do all of those things after documents requested were produced.

### F. There Was No Prejudice to the Defendants Due to the Alleged Late Designation of Experts

With respect to Appellant's contention that there was a lack of prejudice due to his alleged late designation of experts (which was caused in part by the delay by the Defendants due to the delay in providing documents such that reports could be prepared) because he provided Reaves' initial report and an e-mail explanation of her testimony to Bear Creek's counsel in March 2024. (*Brief*, pp. 21-22), the Appellees improperly allege that "In support of that representation, his citations to the Clerk's Record are to his own pleadings in the trial court, not to any actual evidence of such alleged communications such as copies of e-mails or a declaration. *Brief*, pp. 25-26. Such was not the case, however, as Relator described in detail in his Appellant's Brief and references to the record the precise content of the e-mails in question.

## G. The Defendants Refused to Produce Sufficient Documents to Allow Relator to Properly Calculate the Amount of Penalties and Monies He Sought to Recover at Trial

The Appellees contended that an interrogatory response states that LaFountain has not yet calculated the amount of money he seeks to recover at trial (which was just 2 months away), and cannot identify (1) the number of "Unlawful Acts" he contends Defendants committed, or (2) the amount of civil penalties he will seek for each Unlawful Act. *Brief,* p. 39. This allegation ignores the fact that Relator couldn't do those things because the Defendants withheld documents from Relator that would have allowed him to make the calculations needed.

## CONCLUSION AND PRAYER

For the reasons set forth herein, Relator contends that the trial Court abused its discretion by striking the testimony of Appellant's experts Dr. Olson and Sally Reaves, and further abused its discretion by refusing to grant Relator's Motion to Compel Production of Documents and Motion to Amend Scheduling Order. Further, this Court should reverse the trial court's decision granting the Bear Creek Defendants' Second Amended No-Evidence Motions for Summary Judgment, as it should have been denied in all respects under the legal sufficiency standard. Plaintiff submitted enough evidence in the form of the Affidavit of Relator that shows that there are genuine issues of material fact with respect to all elements of all TMFPA causes of action in his Fourth Amended Petition, especially the allegations pertaining

to fluoride varnish not being applied as required. The Relator certainly provided more than a scintilla of evidence with respect to each element of each cause of action against the Bear Creek Defendants, which is all that Texas law requires. Accordingly, the Bear Creek Second Amended No-Evidence Motions for Summary Judgment should have been denied, and Appellant requests that this Honorable Court reverse the lower court's granting of said Motion.

Respectfully Submitted,

By: /s/James R. Tucker

**JAMES R. TUCKER**
State Bar No. 20272020
5522 Ellsworth Ave.
Dallas, Texas 75206
(214) 505-0097
(214) 599-8874[fax]
rusty@rustytuckerlaw.com

**ATTORNEY FOR APPELLANT**
**STATE OF TEXAS ex. rel.**
**JOSHUA LAFOUNTAIN**

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word, I certify that this brief contains fewer than 7,500 words, excluding portions of the brief exempt from the word count requirement under Texas Rule of Appellate Procedure 9.4(i)(1). I further certify that it complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e), as it was produced on a computer, printed in a conventional typeface no smaller than 14-point.

/s/ James R. Tucker
James R. Tucker

## CERTIFICATE OF SERVICE

I certify a true and correct copy of the foregoing Appellant's Reply Brief has been sent via e-file and serve and e-mail on November 10, 2025, to:

CRAIG D. CHERRY
Bar No. 24012419
Email: ccherry@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710

JANE WEBRE
State Bar No. 21050060
Email: jwebre@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701


CHRISTOPHER S. AYRES
State Bar No. 24036167
Email: csayres@ayreslawoffice.com
R. JACK AYRES, JR.
State Bar No. 01473000
Email: rjayres@ayreslawoffice.com
AYRES LAW OFFICE, P.C.
8140 Walnut Hill Lane, Suite 830
Dallas, Texas 75231

**Attorneys for Appellees**

/s/James R. Tucker
**JAMES R. TUCKER**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Tucker on behalf of James Tucker
Bar No. 20272020
rusty@rustytuckerlaw.com
Envelope ID: 107871076
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Bear Creek Appellants Reply Brief
Status as of 11/10/2025 2:51 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michaelle Peters | | mpeters@scottdoug.com | 11/10/2025 2:36:42 PM | SENT |
| Luis Garcia | | lgarcia@scottdoug.com | 11/10/2025 2:36:42 PM | SENT |
| Christopher Davis | 24050483 | cdavis@grayreed.com | 11/10/2025 2:36:42 PM | SENT |
| Rowe Ayres | 1473000 | rjayres@ayreslawoffice.com | 11/10/2025 2:36:42 PM | SENT |
| Angela Brown | 24034533 | abrown@grayreed.com | 11/10/2025 2:36:42 PM | SENT |
| Jane Webre | | jwebre@scottdoug.com | 11/10/2025 2:36:42 PM | SENT |
| Nicollette Morton | | filings@ayreslawoffice.com | 11/10/2025 2:36:42 PM | SENT |
| Christopher Ayres | | csayres@ayreslawoffice.com | 11/10/2025 2:36:42 PM | SENT |

Associated Case Party: Joshua  LaFountain

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Tucker | 20272020 | rusty@rustytuckerlaw.com | 11/10/2025 2:36:42 PM | SENT |

Associated Case Party: Buckner Marketplacce Dental, P.A. et. al.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Craig Cherry | | ccherry@cjsjlaw.com | 11/10/2025 2:36:42 PM | SENT |